First case this morning is 4100105 People v. Tilley for the appellant Gary Peterson for the appellee Kathy Shepard. Thank you, your honor. May it please the court. Counsel, Gary Peterson on behalf of the defendant appellant Dina Tilley. Following a bench trial, Ms. Tilley was convicted of the unlawful participation in the production of between 100 and 400 grams of methamphetamine. The issue on appeal is whether the weight element of the offense was proven beyond a reasonable doubt. The evidence established that the police seized 391 gram pile of substances from the Tilley residence. The substances were variously described as a white substance, a black substance, a chocolate substance, and a powdery substance. Agent Mauser took a sample of the 391 gram pile and sent it to the lab for testing. The sample was described as a white substance which had some black in it. The lab tested the sample and the sample tested positive for the presence of methamphetamine. The party stipulated in the lab report and the lab report is unclear whether the methamphetamine was found. Does the evidence show whether the white substance, white powder, black material could have been separated for separate testing? No, there's no evidence. The lab report is the only evidence of what happened at the lab and there's no indication that they tested the substances separately. I'm asking whether it was even possible to separate them for individualized testing. There's no discussion of that in the record, but I do have a case before this court where they seized a crack pipe from a defendant in Champaign. No substance was visible in the pipe. The chemist was able to take an invisible substance from the pipe, test it, and find that it tested positive for a controlled substance. I have no doubt that if the lab had tested the black substance, they would have been able to test the black substance and the white substance separately. Are you saying they needed to test the whole 391 grams? No, not at all, Your Honor. They either had to establish that this was a homogenous substance, which they failed to do, or if there was more than one substance and there was, there was at least a black and a white, maybe a chunky and a powder, then they had to test each individual substance. Was it all in the same bag? It was all in a garbage bag. There was a garbage bag found in the Tilley residence that had all kinds of discarded waste from Mr. Tilley's methamphetamine production process. In that bag, along with other garbage, there was a smaller bag. It was described as a gift bag. It was open. It also had various garbage in it. It had the 391 grams. A pile of substances at the bottom of that bag, correct. Now the issue at trial, which was well delineated by the parties, was whether this pile of black and white substances was homogenous. If it was homogenous, then the trial could infer that the untested substances had the same chemical composition as the substances that were tested by the lab. In finding the defendant guilty, the trial court relied on this inference, stating that if you throw a gram of cocaine in a truckload of corn, you have four tons of cocaine. The problem with the court's analysis is that corn and cocaine are not homogenous. Homogenous substances... Where is that defined in the statutes? Homogenous?  It's defined by case law, Your Honor. As what? As a... In Peeple v. Jones, the court cited Peeple v. Kaloudis as an example of what is a homogenous substance. In Kaloudis, there were 100 tablets that had identical markings. The lettering characteristics, beveling, and scoring were all identical. The test result from three was held sufficient to conclude that all 100 contained the same substance. That's an example given by our Supreme Court of a homogenous substance. Webster's on the Bridge defines homogenous, the Latin term meaning of the same kind, and refers to the word homogenous, which is defined as having no discordant elements of uniform structure or composition throughout. It's clear that in this case where you have both black and white, not to mention powder and chunks, the substance was not homogenous. Well, Counsel, that's why I asked you whether it was even possible to separate the powder from the chunks out. You said there's no evidence to show that it was possible. There's no evidence to show that it was not possible. I mean, we do know it's not homogenous, and you can't rely on random testing under these circumstances. Go ahead. The sample that was tested was 25 grams? 25 grams, yes. And it contained black and white, didn't it? It contained black and white. What more do you need? Well, we don't know if the methamphetamine was found in the black or the white. If it was found, it was a white substance which had some black in it. If it was found in the black, then the majority of the 391 grams did not contain methamphetamine. Is your premise based upon the color difference? Based upon the color and the fact that... Instead of being white and black, it was white and creamy. Would you be here? Yeah. I mean, based upon colludas, which was cited in Jones, it has to have identical characteristics to allow for the... I mean, it's not that difficult, and I understand your concern, Justice Turner. But I have no doubt that the lab can test each of these substances and make a determination. And it's not that difficult. If you have two different substances, test one, test the other, and that's all they need to do. Here, they tried to take a shortcut. First, they'd have to separate it out, right? They'd have to separate the black and the white? Yes. And then, how do you make sure that you've got... You don't have a little trace of white in with your black, and a little trace of black in with your white. Well, I guess that would be a subject for a litigated trial. I mean, they have to be careful. I mean, in this case, they weren't very careful throughout this whole trial. Yeah, it seems to me, in hindsight, you can criticize everything they do. All of this, as Justice Starkman says, this was a little more black than the other black you had. This is a little more white than the other white you had. This is a little creamy, and that was a little chunky. There's no place to draw the line. Well, we don't know, because there was no testimony elicited. It's burdens on the state to prove their case. Here, they decided to stipulate the lab report. And the intention of the parties was to narrow the issue to the question of whether this was homogenous or not. The state's theory was that it was all one substance. It was homogenous, so they could extrapolate. The defense theory, it was not homogenous. And I think it's clear when you have black and white, you do not have a homogenous substance. And I cite People v. Adair, which stated a recent case from the 1st District. It said the substances were not even of the same color. They cannot be homogenous. Any further questions? Thank you. Thank you. You don't have time to rebuttal. Ms. Shepard. May I please report? Counsel? Adair, just mentioned by opposing counsel, involved pills. Contrary to defendant neither Jones nor any other authority required, that a substance other than quantity of pills be homogenous in order to occur, that it contains a controlled substance if a sample of it tests positive. What did Jones concern? Pills? Jones did not concern pills. It concerned separate packages of a white rocky substance. And in fact, Jones refutes defendant's argument because the substance in Jones was homogenous. It was a white rocky substance. It was included, it was contained in five separate, identically appearing packages. The court in Jones, Supreme Court in Jones, referred to homogeneity in distinguishing colludus, which involved pills. The court said that unlike pills, which may appear to be identical, as in colludus, separate packets, containers, or samples may contain different substances. So even though, as in Jones, the substance in each appeared to be identical or homogenous, the state thus was required to test the contents of each separate packet, container, or sample. There aren't any cases that apply the homogeneity requirement outside of pills. And it turns on the nature of pills, which are discrete, separate substances, whose occurrence signal their contents. They can't be said to contain anything other than what the pills. So there's no case directly addressing the circumstances that we have here of just 300 grams of stuff? The state cited a couple of Supreme Court cases that hold that the byproduct of meth manufacture is included in the substance contained in meth. That falls under the statutory definition. That case is McCarty-Stoffel, also held the same thing, relying on McCarty. I think counsel seems to be arguing that it was the state's burden to prove the substances were homogenous. Do you agree with that? I do not agree with that. There's no case that holds that. And there's not, as your honors are pointing out, there's no indication in this case that the substances could be separated and that it would be, even more so, that it would be safe to do so. As the cases hold, as this court has held, meth manufacturing is very dangerous. It involves highly combustible components. That's why in this case there was only a tiny sample taken. It was wrapped carefully. The rest of it was destroyed. There's no burden, and there's no case holding that there was a burden on the state to separate anything. It was in a single container. It was mixed by co-defendant Jimmy in manufacturing the meth. It's a substance containing meth. So then that's a decision for the trial court to make? It's a question of law, or is it a question of fact? The decision being, what is the decision for the trial court? Well, the question is, who has to prove that the substance was homogenous? No one does. The substances were. No. The only time when homogeneity applies to a substance is when the substance is a quantity of pills. And in that way, if you've got a quantity of pills that look the same and are homogenous, they appear to be the same, then you can infer that if you test some of those pills and that sample tests positive for a controlled substance, then you can infer that the entire quantity contains a controlled substance. So that's the context of you have a bag of 600 pills that all appear identical and you eat at random? Exactly. And it was in distinguishing colludas that Jones referred to homogeneity. He said that you can't say that the bags of identically appearing substance in this case are like the pills in colludas. There's no case Jones doesn't hold. There's no case that holds that the substance, if it's not a quantity of pills, has to be homogenous. What if this bag that had the 391 grams in it had a couple of bricks in it? That's not this case, Your Honor. I know, but I'm asking you. Your argument would be, we don't need to worry about homogeneity. It's all in the same bag, so you could just add the weight of the bricks, right? Well, then you get into the kinds of hypotheticals and extreme examples that the trial court also referred to. It would be easy for the police to take out those bricks, and it also would go to whether or not a mixture containing that could actually be said to contain a substance. It's just a matter of common sense. And Jones did refer to that. The homogeneity issue turns on what you can infer, what are reasonable inferences that you can make. And so that would be a common sense determination. Well, if it depends on common sense, then if they could separate the black from the white, why didn't they go ahead and do it? It's not as extreme. It's not something that could be separated. The cases don't hold that you're required to do that. And it also goes to, again, what the cases have defined substance-containing meth to be. It's a mixture, or as the Supreme Court held in McCarty, substance is the ingredients of meth manufacture. So the cases would not cover the brick example. The cases do not require any separation here. And again, the record shows it was impossible to separate out those substances. And especially, again, we have to remember how dangerous meth manufacture is and that those ingredients are. And there's no indication and no requirement that it would be possible to separate out the substances in this case. And in fact, it was a single substance containing meth. And we have to remember, too, meth, there are cases talking about cocaine, powder cocaine, and that's a white powder. Meth is not described that way. It has not a uniform appearance. It's also something that the defendant is making in his home. And these are the remnants of the meth manufacturing process. We're not requiring that it be pure. We're not requiring that it be saleable or usable. The statute goes to prohibiting this dangerous process of manufacturing meth. Assume hypothetically it was possible, would have been possible, for the substances to have been separated, that is, the white from the black. If so, would the state need to show that that was done in order to sustain the conviction here? Excuse me. Well, if you're saying that it was required to separate them, then... I'm saying if it were possible and the evidence showed that it was possible, does that change the case here? I don't think so, Your Honor, because there are cases such as Butler, and even this court's decision in Coleman involving a hypothetical where you mix cocaine and this baking powder or something, that hypothetically it could be possible to separate out those substances. I'm sure that there's some chemical process that could be used to do that. But that's not what is required. The statute doesn't require it. The case law doesn't require it. And that's not the aim of the statute. The statute says, it has been interpreted to mean, and of course it does say any substance containing that, and the statute has been interpreted to be aimed at preventing this very dangerous manufacture. And as I understand the facts are there's this bag with the powder and the chunks, and they basically just scooped up the sample out of that bag and that's what was tested. Yes, Your Honor, and I have to point out, as we discussed in our brief, there's only one reference in the evidence to black chunks, and that was when Codefendant's Counsel elicited Agent Mauser's agreement on cross-examination that on direct he had described the gift bag contents as a white chunky substance with black chunks. Mauser agreed with that characterization, but it was actually inaccurate because he never talked about black chunks in his testimony on direct, and in fact the state's brief details the many references that he made to powder substance. And the only other evidence of the contents, the nature of the gift bag contents, was the lab report which described it as chunky powder. So, again, that's what the evidence shows. I guess, unless the Court has any other questions, I'll simply ask that you're done. Okay, thank you, Counsel. Rebuttal, please. I am somewhat surprised, if I understand the State's position correctly, that they're not required to prove homogeneity, because that was the issue that was delineated by the parties at trial. That was the issue presented to the trial court. Now, as far as powder... Well, you can see it's not an element of the crime, though. No, it's not an element, but that's what allows the inference to occur. I mean, the State has to prove... If they want to have an inference from a sample of a substance and infer that the entire substance has the same chemical composition, then they have to prove the foundation to make that inference, and that's... Is she right that that's only been used at this point with regard to pills? I disagree with that. First, I would... What's the case that says otherwise? Well, People v. Jones, where they set out the requirement of homogeneity, as you noted, dealt with powder. That was three bags, or five bags. That was three bags, but they set out the principle of homogeneity. Was there any case at all like the facts here, where you just have a bunch of stuff together and the court never talked about the need to distinguish substances or to demonstrate homogeneity because there appear to be different substances within the stuff altogether? The closest case is People v. Adair, where they had pills and powder, and the chemists made the pills into powder, combined the powder and the powder from the pills altogether, tested it, and the court held that that was not sufficient. So we'd be the first case to hold that if you have powder that appears to be of different form or color, then you have to break it down and determine which is which? Yes, I think I would, Your Honor, and I think there's a reason for that, because I don't... If the state reads the case law, they don't proceed on the theory that you can allow an inference based upon a non-homogenous sample. Why? Because the case law says you can't. Well, but we don't have anything like this. For instance, to be direct, Mr. Peterson, here's this 390 grams of stuff that has some chunky white stuff and some black chunks in it as well. If you took a sample from this portion of it and took a sample from another portion of it, what reason is there to believe that the samples would test differently? That the sample would what? That these two samples, as I described it, would test differently. Well, I guess it would depend on the technique used by the chemist. Well, suggest to me why we should suppose that they would test differently. It's 390 grams. Well, you have one sample. The chemist takes white powder out of one sample. I didn't say just take white powder. I mean, we have a mixture. It's all mixed together. So he takes some from the left-hand portion and some from the right-hand portion. Why should we think they will test differently? Well, I suppose what would happen, they might find methamphetamine in both samples, but you wouldn't know if it came from the black or the white. What aspect of law requires that we know that? The statute speaks of any substance containing methamphetamine. Correct, but if you have more than one substance, you have to prove that both substances contain methamphetamine. Here we have more than one substance. It was not a homogenous substance as required by our Supreme Court. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.